UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE LUSTER-MALONE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 cv 09227 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| COOK COUNTY et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Denise Luster-Malone brought this disability-discrimination action against Defendant Cook County.[1] Luster-Malone worked for the County at Stroger Hospital from 1984 to 2009, when she was fired, according to the County, for insubordination and for improperly claiming overtime benefits. DSOF ¶¶ 22, 26-29, 44-50. Luster-Malone claims, however, that these justifications are pretextual: she was really fired because she is obese, and as retaliation for her anti-discrimination complaints. R. 51, Pl.'s Am. Resp. Br. at 7-8, 14-16. For the reasons discussed below, Cook County's motion for summary judgment [R. 37] is granted.

---

[1]The Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331. Citation to the docket is "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Cook County's Statement of Facts) [R. 38]; "Pl.'s Resp. DSOF" (for Luster-Malone's response to Cook County's Statement of Facts [R. 42]); "Am. PSOF" (for Luster-Malone's Amended Statement of Additional Facts) [R. 50]; "Def.'s Resp. PSOF"(for Cook County's response to Luster-Malone's Amended Statement of Additional Facts) [R. 53]; and "Def.'s Reply Pl.'s Resp. DSOF" (for Cook County's reply to Luster-Malone's response) [R. 52], followed by the paragraph number.

# I. Background

The Court views the evidence in the light most favorable to the non-movant, here Luster-Malone, in deciding a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Denise Luster-Malone held several different positions at Cook County's Stroger Hospital, from 1984 to her firing in 2009, when she was a "higher administrative assistant" in the Nursing Department. Pl.'s Resp. DSOF ¶¶ 9-11; DSOF ¶ 43. During the final five years of her career with the hospital, Luster-Malone weighed around 300 pounds. DSOF ¶ 16. According to Luster-Malone, her weight did not go unnoticed: she alleges that her supervisor, Antoinette Williams, made "several derogatory remarks about her weight," including, in May 2009, that her "big fat ass needs to concentrate on losing weight or something to that effect." Am. PSOF ¶¶ 26-27. Although she gained a significant amount of weight following her firing, DSOF ¶ 19, neither Cook County nor Luster-Malone asserts that her weight negatively impacted her work performance or her ability to do everyday things such as cooking and cleaning, grocery shopping, dancing, or walking up and down stairs—at least during *most* of the time of her employment *id.* ¶¶ 17-18. As discussed below, however, toward the end of her employment with the County, Luster-Malone did have trouble walking across the parking lot at work. *See* R. 39-6, Def.'s Exh. F, Luster-Malone Dep. at 139 (describing how Luster-Malone had her daughter drop her off so she did not have to walk across the parking lot).

On March 30, 2009, Cook County changed its overtime policy so that certain positions were no longer eligible for overtime without prior approval, except in cases

of emergency. DSOF ¶ 20; Pl.'s Resp. DSOF ¶ 20. Nevertheless, Luster-Malone's supervisor, Antoinette Williams, observed her filling out dates and hours on a blank request-for-overtime form that already noted the approval of two supervisors—despite the fact that, according to the County, office policy required supervisors to approve the form *after* it was completed. *See* DSOF ¶¶ 26-29. Luster-Malone disputes that it was necessary to obtain approval only after the overtime form was completed. Pl.'s Resp. DSOF ¶¶ 27, 29; Am. PSOF ¶ 9. *Contra* Def.'s Reply Pl.'s Resp. DSOF ¶ 27. After an investigation, Williams determined that Luster-Malone had requested reimbursement for 8.7 hours of overtime work that she had not performed, and had asked two other employees to say that she had been working in the Endoscopy Department / Clinic R, when in fact the two employees had not seen her there that day. DSOF ¶¶ 30-38. As detailed in the Analysis section below, Luster-Malone asserts that she did work the overtime (but does not specifically dispute that she called other workers and asked them to say that she was working for the Endoscopy Department / Clinic R). *See also* Def.'s Reply Pl.'s Resp. DSOF ¶¶ 37-38.

Williams moved for a pre-disciplinary hearing on August 19, 2009, pursuant to the Collective Bargaining Agreement and Cook County Personnel Rules, and gave Luster-Malone a letter informing her of the allegations against her. DSOF ¶¶ 39-40. Because Luster-Malone was out of the office on August 18 and 19, she did not receive the letter until August 20. *Id.* ¶¶ 23, 40. The day before (August 19), Luster-Malone filed a disability-discrimination complaint with the Illinois Department of Human

Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC)—on the very same day that Williams moved for a pre-disciplinary hearing. *Id.* ¶¶ 24, 40.

Luster-Malone was involved in a second incident on September 21, 2009. After being repeatedly asked to transfer certain electronic files to a flash drive, Luster-Malone returned the drive with only four files on it—leaving out the majority of the files that she had been tasked to transfer. *Id.* ¶¶ 44-49. Luster-Malone explains that although she had the drive for an hour and a half, her working time with the drive was drastically reduced when her diabetes required her to get food during this time. Pl.'s Resp. DSOF ¶ 45. Williams also moved for a pre-disciplinary hearing for this incident with Luster-Malone, citing a "major cause violation of Gross Insubordination and Failure to Perform Duties as Assigned of the Personnel Rules." DSOF ¶ 50.

Luster-Malone's pre-disciplinary evidentiary hearing was held on September 10, 2009, after which the hearing officer concluded that Luster-Malone had committed major fraud misconduct for her overtime incident. *Id.* ¶¶ 41-43. After a separate hearing held on October 1, 2009, the same hearing officer also concluded that she had committed a major cause violation for her flash drive incident. *Id.* ¶¶ 50-53. She was fired on October 5, 2009. *Id.* ¶ 43.

Pursuant to the Collecting Bargaining Agreement procedures, the issue was sent to arbitration on February 22, 2011. *Id.* ¶ 58. The arbitrator determined that there was cause for Luster-Malone's firing and found her testimony to be inconsistent and contradictory. *Id.* ¶ 61.

## II. Legal Standards

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The ADA prohibits employers from discriminating against employees who are disabled on the basis of their disability, and from retaliating against employees who make an anti-discrimination complaint. *See Dickerson v. Bd. Trs. Of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600-01 (7th Cir. 2011); 42 U.S.C. §§ 12112(a), 12203(a). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1). A plaintiff seeking to prove disability-based discrimination in the Seventh Circuit may use either the direct or the indirect method of proof. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089-90 (7th Cir. 2000). Retaliation, like discrimination, may be established by either the direct or indirect methods of proof. *Dickerson*, 657 F.3d at 601*at*.

Under the direct method, the plaintiff can meet her burden by presenting either

5

direct or circumstantial evidence. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 670 (7th Cir. 2000). Direct evidence requires an admission by the decision maker that his or her actions were based on the prohibited animus. *Buie*, 366 F.3d at 503. This is a difficult burden, made even more challenging because few employers overtly make discriminatory remarks. Alternatively, the plaintiff may directly prove discrimination with circumstantial evidence. *Id.* This may include evidence of "(1) suspicious timing[,] (2) ambiguous statements or behavior towards other employees in the protected group[,] (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment" or "(4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson*, 657 F.3d at 601.

Under the indirect method, and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), discrimination may be proven through a burden-shifting framework. First, the plaintiff must establish a *prima facie* case of discrimination. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). This requires the plaintiff to show that: "(1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Dickerson*, 657 F.3d at 601. Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to "identify a legitimate, non-discriminatory reason for its employment decision." *Id.* Finally, if the defendant meets this burden, the plaintiff

6

must prove by a preponderance of the evidence that the defendant's reasons are mere pretext for discrimination. *Id.*

But since its creation, the direct/indirect-method framework has taken on a life of its own. As the analytical structure has been applied over time, in case after case, various corollaries and rules have been hung onto the structure, causing confusion and imposing a too-high burden on plaintiffs who had enough circumstantial evidence to get past summary judgment. A majority of active-service Seventh Circuit judges has now opined that the direct/indirect-method analytical structure has done more harm than good, and that it is more straightforward to just ask "whether a reasonable jury could infer prohibited discrimination." *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013); *see also Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring). This new, simplified approach aims to move the analysis back to the "statutory question of discriminatory causation" at hand, *see Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 680 (7th Cir. 2012), while avoiding "the confusing 'snarls and knots' of this ossified direct/indirect paradigm," *Hitchcock*, 718 F.3d at 737 (quoting *Coleman*, 667 F.3d at 863). This approach is more faithful to what is required—and what is *not* required—by Rule 56. *See, e.g., Good*, 673 F.3d at 680. One might ask whether this approach is consistent with *McDonnell Douglas*, which set forth the *prima facie* and burden-shifting method of analysis. The answer is yes: what *McDonnell Douglas* did was explain that plaintiffs can successfully raise an inference of discrimination (enough to get to a jury) even if an employer presents evidence of a legitimate, non-discriminatory reason, because plaintiffs must have "a full and fair opportunity to

demonstrate by competent evidence" that the asserted reason is a pretext for discrimination—and that inquiry considers any relevant evidence. 411 U.S. at 804-05 (describing the relevant evidence to include, in that case, the employer's treatment of similarly situated white employees; the employer's treatment of the plaintiff during his employment; the employer's reaction to the plaintiff's legitimate civil-rights activities; the employer's general policy and practice on minority employment). The Seventh Circuit's new approach, which ensures that no plaintiff is unnecessarily tangled by hollow formalism, is therefore consistent with Supreme Court precedent. *See Hitchcock*, 718 F.3d at 737.[2]

## III. Analysis

As explained below, the Court ultimately concludes that the record evidence does not raise a genuine issue of disability discrimination or retaliation. The County fired Luster-Malone because supervisor Antoinette Williams honestly believed that Luster-Malone claimed that she performed 8.7 hours of overtime work that she had not performed, and had asked several other workers to lie on her behalf. No evidence genuinely undermines the County's asserted reason for firing Luster-Malone, not even when that evidence is viewed as a whole and in her favor. Before discussing the evidence concerning the reason for firing Luster-Malone, the Court addresses the threshold issue of whether Luster-Malone even had a disability under the ADA.

---

[2]Although the Court does not expressly subject the facts at hand to the direct or indirect method, the results of this motion would be no different under either method. *See McDonnell Douglas*, 411 U.S. at 800.

## A. Obesity as a Disability

As a threshold matter, Luster-Malone must present enough evidence to allow a reasonable jury to find that she has a qualifying disability under the ADA. The Court need not ultimately decide the issue (because Luster-Malone does not present enough evidence of discrimination or retaliation), but it is worth discussing for completeness's sake. Although Luster-Malone was indisputably overweight at the time of her employment, *see* Pl.'s Resp. DSOF ¶ 16, obesity does not generally qualify as a disability under the ADA: as the ADA interpretive guidelines note, "obesity is not considered a disabling impairment" except in "rare circumstances," *Bryant v. Troy Auto Parts Warehouse, Inc.*, No. IP 95-1654-C-D/F, 1997 WL 441288, at *4 (S.D. Ind. Apr. 25, 1997) (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(j)). Luster-Malone's obesity might not be one such "rare circumstance." *Id.* Her weight during at least some of the time she was employed did *not* prevent her from walking up and down stairs, cooking and cleaning her house without using a wheelchair, going grocery shopping without the aid of an electric scooter, walking through the airport without assistance, and even dancing at dance clubs. DSOF ¶ 17; *see Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670-71 (7th Cir. 2011) (holding that the plaintiff had no disability under the ADA because the record contained no evidence that her alcoholism affected her home life). Nor did her weight have any impact on her work performance or limit the work that she could perform. DSOF ¶ 18; *Ames*, 629 F.3d at 670 (noting as particularly persuasive the plaintiff's own admissions that her alcoholism did not affect her work performance). The fact that Luster-Malone has gained over 100 additional pounds since

her firing and no longer can do many of these things, DSOF ¶ 19, has no bearing on her ADA claim, which requires that she show that was disabled *during* her employment. At most, Luster-Malone has shown that her weight made it more difficult for her to walk during the final months of her employment. *See* Am. PSOF ¶ 29 (noting her osteoarthritis); Luster-Malone Dep. at 139 (describing how she had her daughter drop her off at work so she did not have to walk across the parking lot). Although this is not much, viewed in the light most favorable to Luster-Malone, it might nevertheless be sufficient to establish an ADA-covered disability at this stage in the litigation: the evidence is unclear as to whether Luster-Malone could perform normal activities such as shopping, walking up stairs, or dancing during the period of time when she could not walk across the parking lot. DSOF ¶ 17; Am. PSOF ¶ 29; Luster-Malone Dep. at 139. It is possible to reasonably infer that Luster-Malone's condition got worse in the final period of her employment, progressing to the point where her ability to walk was substantially limited. In any event, there is no need to definitively decide the question, because there is insufficient evidence of discrimination or retaliation, even if Luster-Malone did have a disability under the ADA.

## B. Discrimination

To prove discrimination, Luster-Malone first argues that she "has produced direct evidence of discrimination," citing as support her supervisor's comments. Pl.'s Am. Resp. Br. at 10. Specifically, as detailed in her statement of facts, Luster-Malone claims that Williams "ma[de] several derogatory remarks about her weight," Am. PSOF ¶ 26 (citing Luster-Malone Dep. at 132:3-9, 143:12-24, 143:12-17, 146:6-10), and

"that Williams told her in early May around her Grandfather's death, [']your big fat ass needs to concentrate on losing weight['] or something to that effect," *id.* ¶ 27 (citing Luster-Malone Dep. at 149:6-14). These are the only discriminatory acts alleged by Luster-Malone.[3]

First, it is unclear from either Luster-Malone's statement of facts or the deposition transcripts cited therein, exactly when the "several derogatory remarks" in question took place, or in what context they were made. *See id.* ¶¶ 26-27; *see also* Luster-Malone Dep. at 131-32 (noting, without more, that Luster-Malone had filed two grievances); *id.* at 143 (claiming that Williams "cursed and made derogatory comments regarding my weight" at some point in 2009 before the August events); *id.* at 146 (noting how similarly situated employees' overtime was treated); *see also id.* at 147 (describing, among the "harassment" that she received, "the derogatory comments that [Williams] made a couple of time that I can recall regarding my weight"). None of these comments is sufficiently detailed to allow the Court to conclude that there is a link between those comments and Luster-Malone's firing.

Second, the Court turns to Luster-Malone's more specific allegation that Williams told her something to the effect of "your big fat ass needs to concentrate on losing weight" in May 2009. Am. PSOF ¶ 27; *see also* Luster-Malone Dep. at 148-49

---

[3]Because none of these comments constitute an admission by Williams that her actions were based on discriminatory animus, they do not constitute "direct" evidence of discrimination. *See Buie*, 366 F.3d at 503. The Court nevertheless continues its analysis to examine whether these comments provide circumstantial evidence of discrimination. Circumstantial evidence of discrimination "is evidence that allows a jury to infer intentional discrimination by the decision-maker." *Id.* (internal quotation marks and citation omitted).

(claiming that after she asked Williams why she had not received a computer that she was expecting, Williams said something like "[your] big fat ass needs to concentrate on losing weight"). This comment was purportedly made in May 2009, around three months before the overtime-work investigation, and around five months before Cook County formally decided to fire her. Luster-Malone Dep. at 149. The timing of the remark, therefore, does not connect the remarks to Luster-Malone's firing. Nor does its context. Williams allegedly made this remark after Luster-Malone pressed her on why Luster-Malone had not yet received a new computer, *id.* at 148-49, not during the course of the overtime investigation, nor even around that time. It is true that, at a very high level of generality, the remark did concern a workplace matter, so it was not made in a purely personal context, but it was so far removed in time and in content to the firing decision that no reasonable jury could connect the remark to discrimination for the employment termination. So even when viewed in the light most favorable to Luster-Malone, Williams's derogatory remarks are too disconnected in both time and content from the firing decision to support Luster-Malone's theory of discrimination. At most, this evidence might show some animus on Williams's part towards overweight individuals—but the evidence does not show that the animus played any role whatsoever in Luster-Malone's termination. Moving beyond Williams's remarks, in an effort to raise a genuine issue of fact on discrimination, Luster-Malone relies on several purportedly "intentional" "violation[s] of policy and procedure" in the disciplinary process. Pl.'s Am. Resp. Br. at 10. It is true, as a general matter, that deviations from the disciplinary process can raise an inference of pretext. But, of

course, it depends on the circumstances, and here, even when viewed in Luster-Malone's favor, the disciplinary process does not produce an inference of pretext.

First, Luster-Malone complains that the disciplinary proceeding was held by the Director of Emergency Nursing, when it should have been held by the Associate Director of Nursing/Divisional Director. Pl.'s Am. Resp. Br. at 10; Am. PSOF ¶ 17. In support of this point, Luster-Malone cites to the Nursing Policy Manual, which notes that "Nursing Department Administrative Personnel, (Associate Director of Nursing/Divisional Director) will serve as Hearing Officer Designees for Pre-disciplinary hearings." R. 50-4, Pl.'s Exh. D at 1. In her deposition, Luster-Malone elaborates, explaining the policy as:

> [t]he director—your immediate supervisor[—]takes you to a hearing . . . [and o]nce they finish with the hearing, they discuss everything with the Associate Director, which was Antoinette Williams. They are supposed to discuss with her and she decides what is supposed to be done to that employee.

Luster-Malone Dep. at 118. Luster-Malone's disciplinary proceeding was held by Cindy Przislicki, the Director of Emergency Nursing. *See* Am. PSOF ¶ 17P. Luster-Malone claims that this was a mistake, and that this purported violation of policy and procedure led her to be "subjected by discrimination." Pl.'s Am. Resp. Br. at 10; *see also* Luster-Malone Dep. at 118 (noting that "[n]o other Associate Director of Nursing has ever taken an employee to a hearing. The Divisional Director who is over that employee is supposed to take that employee, which  should have been Joseph Malcom."). Those dots cannot be connected to raise a genuine issue for the jury. As an initial matter, the Nursing Policy Manual cited by Luster-Malone appears to allow that

*either* the Associate Director of Nursing *or* the Divisional Director can appropriately serve as the hearing officer. Pl.'s Exh. D at 1. As the Director of Emergency Nursing, Przislicki appears to be a Divisional Director—and therefore an acceptable hearing officer under the Nursing Policy Manual. In any event, even if the Court accepted that Przislicki was not an appropriate hearing officer for Luster-Malone's pre-disciplinary hearing under the Hospital's policy, what Luster-Malone does not explain is why that difference in hearing officer is material. For example, Luster-Malone does not detail how, if at all, the hearing officer treated Luster-Malone worse or unfairly. She does not explain how the assignment of the hearing officer occurred: the manner of appointment could raise an inference that the fix was in. But Luster-Malone does not point to any record evidence on that issue. It would also be important to know how the assignment occurred because if the County executive who made the assignment had no other connection to Luster-Malone's firing or to anyone else connected to Luster-Malone's firing, then there is no basis to link the mistaken assignment to a discriminatory purpose for the firing. Perhaps, during discovery, Luster-Malone got to the bottom of how the assignment came about, but if so, that is not explained in her Local Rule 56.1 Statement of Additional Facts. In sum, even if the hearing officer should have been someone with a different title, that mistake does not suggest that discriminatory animus motivated Luster-Malone's firing.[4]

---

[4]One related argument that Luster-Malone makes is that the letter she received after the disciplinary hearing "states that the charges had no merit and are unfounded leading to confusion for Plaintiff." Am. PSOF ¶ 19. The fact that Luster-Malone was confused about Cook County's decision to fire her has little bearing on the question of whether the termination

Next, Luster-Malone argues that the result of her hearing was pre-determined, as evidenced by two purportedly suspicious actions: (1) her supervisor allegedly sent a letter to the EEOC describing her as terminated before her hearing took place, Pl.'s Am. Resp. Br. at 11; Am. PSOF ¶ 20 (citing only her own deposition as proof of the

---

decision was made for discriminatory reasons. Therefore, this allegation is relevant only insofar as the letter's inconsistency casts doubt on the legitimacy of Cook County's decision to fire Luster-Malone. But there is nothing materially inconsistent or confusing about the letter. After detailing the evidence presented at the hearing, the letter concludes:

It is the findings of this Hearing Officer that the following charges:

1. Misuse of time keeping facilities or records by falsifying salary recharge/overtime report embezzlement of county funds.
2. Theft of county funds.
3. Falsification of time keeping records.
4. Un-authorization of overtime.
5. Failure to follow instructions in accordance of county procedure and /or practice

**have merit and should be upheld.**

Additionally, based on an investigation conducted by Management, you are being charged with the following charge[]:

6. Gross insubordination.

After careful consideration of the facts presented in this case and the information presented at this Hearing, it is the findings of this Hearing Officer that the above charges **have no merit and are unfounded.**

R. 39-8, Luster-Malone Dep. Exh. 20, October 5 Letter to Luster-Malone at 2. The letter concludes by notifying Luster-Malone that the decision has been made to fire her. *Id.* It is clear from this letter that the hearing officer concluded that most, but not all, of the charges against Luster-Malone had merit—and determined that those charges that had merit were sufficiently serious to justify her termination. *Id.* The only inconsistency in this letter is the year in which it was purportedly sent—the letter is dated October 5, 2008, and described the hearing as taking place on September 10, 2008. *Id.* at 1. But the hearing in question took place on September 10, 2009, Am. PSOF ¶ 20, and the letter firing her was issued on October 5, 2009, DSOF ¶ 43. These are obvious typographical errors: the 2008 dates correspond to the relevant 2009 dates described, and it is clear from the letter that it describes 2009 events. *See* October 5 Letter to Luster-Malone at 1-2.

existence of this letter), and (2) the hearing officer asked for her office keys prior to making a ruling, Resp. at 11; Am. PSOF ¶ 21 (citing, nearly verbatim, Luster-Malone Dep. at 124). Neither piece of evidence is sufficient to defeat summary judgment. First, Luster-Malone provides no support for the existence—or the actual content—of the purported Williams letter to the EEOC outside of a citation to Luster-Malone's own deposition. *See* Am. PSOF ¶ 20 (citing Malone Dep. at 121:14-24, 122:1-6). Of course, evidence presented in a plaintiff's deposition or in an affidavit can, and often does, thwart a defendant's summary-judgment motion; long has the Seventh Circuit buried the notion that self-serving evidence is somehow inadmissible. *See, e.g.*, *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). But the presented evidence still must meet the usual evidentiary requirements for summary judgment—including that the evidence be admissible and, if necessary to lay foundation, be based on personal knowledge. *See id.* Here, Luster-Malone gives no explanation as to how she would have personal knowledge of a letter sent from Williams to the EEOC. Nor does Luster-Malone provide a copy of the letter itself. That is particularly problematic because, in her deposition, Luster-Malone does not purport to quote from the letter. Her paraphrase of the letter's content is that it said Luster-Malone "was found guilty of the above charges that she had presented us with." Malone Dep. at 122. Luster-Malone then criticizes the letter by arguing that it predated the hearing, "So how can we have been found guilty and I haven't even had my hearing?" *Id.* But the letter might very well have been the County's response to the EEOC charge, and "found guilty"—remember those words do not purport to be a quote from the letter—might

very well have been Williams's description of the result of the overtime-claim *investigation*, not the upcoming hearing. The point is that the foundation as to the letter's existence and its contents is not enough to allow a reasonable jury—at least a jury not relying on speculation—to conclude that Williams had fixed the hearing's outcome in advance.

Second, Luster-Malone argues that Williams asked for the keys to Luster-Malone's office before making a ruling in her case. *See* Am. PSOF ¶ 21. This too is not the smoking gun that Luster-Malone characterizes it to be. In the context of Williams's recommendation of termination, there is nothing suspicious about the hearing officer asking for Luster-Malone's keys during the hearing. *See* Def.'s Reply Pl.'s Resp. DSOF ¶ 35.

Finally, Luster-Malone questions the validity of Cook County's reasons for firing her. It follows that if Cook County did not have legitimate reasons for firing Luster-Malone, its decision might have been instead motivated by discriminatory animus. But casting into doubt Cook County's justifications alone is not enough; Luster-Malone must show that Williams did not honestly, and in good faith, believe these reasons. *See McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992). Luster-Malone does not attempt to do this. Although she questions some of the underlying facts of Williams's investigation, *see, e.g.*, Am. PSOF ¶¶ 13-16; Pl.'s Resp. DSOF ¶¶ 26-39, she never contends that the investigation was conducted in bad faith. Rather, even when viewed in the light most favorable to Luster-Malone, the record shows that Cook County conducted a thorough investigation of Luster-Malone's purported misconduct,

and ultimately concluded that Luster-Malone had improperly claimed overtime for hours that she did not work. *See* October 5 Letter to Luster-Malone at 2. It might be that Cook County was ultimately wrong, but an employer need only honestly believe that the employee engaged in misconduct, *see McCoy*, 957 F.2d at 373, and there is no record evidence that the investigation was not made earnestly and in good faith.

In conclusion, all of Luster-Malone's evidence, whether taken individually or considered together, is insufficient to support her claim of discrimination; no reasonable jury could infer discrimination on these facts. None of the reasons that she cites show that her weight played any part in Cook County's decision to fire her. *See Pugh v. City of Attica*, 259 F.3d 619, 626 (7th Cir. 2001). The purported name-calling incident came five months before she was terminated, and, as discussed, appears to be in no way associated with the investigation into the mis-claiming of overtime or to the termination decision itself. Nor do any of the purported deviations from standard procedure provide enough evidence from which a reasonable juror could infer that Luster-Malone's firing was motivated by discrimination. What the record does show is that Williams honestly believed, after an investigation, that Luster-Malone claimed overtime for hours that she did not work. In this context, even examining the record as a whole and drawing all inferences in the light most favorable to Luster-Malone, no reasonable jury could conclude that she was fired based on discrimination.[5]

---

[5]The Court need not separately address the flash-drive incident; her theft of overtime provides a more-than-sufficient basis for her termination. The flash-drive incident nevertheless provides an additional, and unrelated, reason for her termination: Luster-Malone's delay in uploading files to her flash drive may have been justified by her diabetes, but her decision to

## C. Retaliation

Finally, Luster-Malone brings a Title VII retaliation claim. In her view, Cook County violated Title VII by firing her in retaliation for filing an anti-discrimination charge. *See* Pl.'s Am. Resp. Br. at 14-16. Cook County disagrees, asserting that it fired Luster-Malone for her theft of overtime and her insubordination related to the flash-drive incident, and did not even know about her complaint at the time that it instituted disciplinary proceedings against Luster-Malone. *See* R. 54, Def.'s Reply Br. at 13-15.

In addition to prohibiting a hostile work environment, the ADA also prohibits retaliating against an employee "because [she] has opposed any act or practice made unlawful [under the ADA] or because [she] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under the ADA]." 42 U.S.C. § 12203(a). Like discrimination, retaliation may be established by either direct or indirect methods of proof. *Dickerson*, 657 F.3d at 601.[6] To survive summary judgment on her retaliation claim under the direct method, Luster-Malone must show that (1) she engaged in activity protected by the ADA, (2) Cook County took an adverse employment action against her, and (3) there was a causal connection between her protected activity and the adverse employment action. *Id.* The parties agree that the first two elements are satisfied, and for good reason: Luster-Malone's IDHR complaint (cross-filed with the EEOC) was "the most obvious form of statutorily

---

"call[] the police and security" on one of her supervisors, Pl.'s Am. Resp. Br. at 11, was not.

[6]There is no reason not to believe that the Seventh Circuit's new combined straightforward approach applies to retaliation claims as well.

protected activity," and her termination was an adverse employment action. *Coleman*, 667 F.3d at 859-60 (internal quotation marks and citation omitted). Thus, the remaining question is whether Luster-Malone has demonstrated a causal link between her protected speech and her termination. Specifically, under the traditional principles of but-for causation, Luster-Malone must show that Cook County fired her *because of* her anti-discrimination complaint. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S. Ct. 2517, 2534 (2013).

Generally, meeting that burden would require Luster-Malone to present either direct or indirect evidence. Luster-Malone lacks direct evidence, which is unsurprising because direct evidence is usually hard to come by. *See Coleman*, 667 F.3d at 860 (describing direct evidence as "something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')" (internal quotation mark and citation omitted)). She thus must rely on a "convincing mosaic" of circumstantial evidence that would permit the same inference without the employer's admission. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)) (internal quotation marks omitted). Under this approach, there are three categories of circumstantial evidence: (1) evidence of suspicious timing, (2) evidence that similarly situated employees were treated differently, and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Coleman*, 667 F.3d at 860. Alternatively, under the Seventh Circuit's new approach, Luster-Malone must be able to show that a reasonable jury could infer improper retaliatory motives for her

termination. *Cf. Hitchcock*, 718 F.3d at 737.[7] After viewing Luster-Malone's evidence in the light most favorable to her, the Court concludes that she has not presented sufficient evidence of pretext to survive summary judgment.

Luster-Malone offers no evidence of similarly-situated employees, and instead argues that the reasons given for her firing were mere pretext. But, as the Court has already discussed, the evidence of discriminatory intent cited by Luster-Malone—comments made by her supervisor months before her firing, and the alleged deviations in the disciplinary process—does not support a reasonable inference that she was fired for any discriminatory or retaliatory purposes. The fact that she was dismissed a few months after filing her anti-discrimination claim does provide some support for her position, but even when taken together with the rest of her evidence, remains insufficient. Moreover, just as evidence of suspicious timing can imply discriminatory intent, timing may also imply that the decision was made for other legitimate non-discriminatory reasons. This is one such instance. Luster-Malone's overtime infraction occurred on August 8, 2009. DSOF ¶ 30. Her supervisor then conducted an investigation of the incident and instituted disciplinary proceedings against her on August 19, 2009—a short and reasonable period of time later. DSOF ¶ 40. Luster-Malone was out of the office on August 18 and 19, and filed her anti-discrimination complaint coincidentally also on August 19. DSOF ¶¶ 23-24. Because Luster-Malone was out of the office on August 19, and does not allege that she

---

[7]The results of this motion would also be no different under the indirect method.*See McDonnell Douglas*, 441 U.S. at 800.

informed Cook County that she filed a complaint on that day, the undisputed facts show that her supervisor most likely had no idea that Luster-Malone had filed a complaint at the time that the supervisor instituted the disciplinary actions culminating in Luster-Malone's termination. This supports the legitimacy of the institution of disciplinary proceedings against Luster-Malone, and likewise the ultimate termination decision. After viewing all of the evidence in the light most favorable to Luster-Malone, no reasonable jury could find that she was fired as retaliation for her protected activity. Summary judgment is entered on the retaliation claim as well.

## IV. Conclusion

For the reasons stated, the Court grants Cook County's motion for summary judgment [R. 37] on Luster-Malone's discrimination and retaliation claims.

ENTERED:

_____ s/Edmond E. Chang _____
Honorable Edmond E. Chang
United States District Judge

DATE: December 12, 2013